No. 26,776.

ANGIE NETTIE RHOADES, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Contributory Negligence — Intoxicated Persons — Evidence.* Upon the issue whether at a particular time a person was exercising due care for his own safety, evidence that he was intoxicated is ordinarily admissible, not as constituting or·conclusively establishing negligence on his part, but as being a circumstance to be considered in determining the matter. (*McIntosh v. Oil Co.,* 89 Kan. 289, 131 Pac. 151.)

2. APPEAL AND ERROR—*Grounds for Arrest of New Trial.* On an appeal from an order granting a motion for a new trial, where the sole ground upon which the trial court based its ruling is held to be untenable, the appellant is entitled to a reversal unless the record affirmatively shows that the motion ought to have been sustained upon some other ground. (*Sutter v. Harvester Co.,* 81 Kan. 452, 106 Pac. 29.)

Appeal from Harvey district court; WILLIAM G. FAIRCHILD, judge. Opinion filed June 12, 1926.. Reversed.

*William R. Smith, Owen J. Wood, Alfred A'. Scott* and *Alfred G. Armstrong,* all of Topeka, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The plaintiff sued to recover damages for the death of her husband, alleged to have been caused by the negligence of the defendant. A verdict was returned for the defendant and against the plaintiff, who filed a motion for a new trial. The motion was sustained, and the defendant appeals.

It was alleged that the defendant railway was negligent in the following particulars: (1) In backing a freight train over the railroad crossing at an unreasonably high rate of speed; (2) in failing to give warning of the train's approach; (3) in failing to display a

Appeal and Error, 4 C. J. p. 664 n. 97. Evidence, 22 C. J. p. 599 n. 31. Motor Vehicles, 28 Cyc. pp.´29 n. 39, 38 n. 25, 49 n. 50. Negligence, 29 Cyc. pp. 534 n. 44, 551 n. 68, 586 n. 45, 620 n. 70.

light on the rear end of the train as it approached the crossing; and (4) in failing to have a flagman or watchman at the crossing. The answer was: (1) a general denial; (2) that the death of plaintiff's husband was caused by his own negligence and not·by reason of any negligence on the part of the defendant; and (3) that the deceased and one R. H. Bird were engaged in a·joint enterprise.

The facts were substantially as follows: The deceased was a passenger in a Ford coupé owned and driven by R. H. Bird. They drove from Hutchinson on the evening of October 11, 1923, en route to Newton. Difficulty with the lights on the car was encountered, and upon reaching Halstead they drove into a garage and had the lights repaired. From there they drove to a restaurant, where they ate lunch, and then started for Newton. They approached the railway crossing at Halstead from the south. At that place are two main tracks, north of which is a spur track to a mill and elevator. The collision occurred at this spur track. Bird testified that when they approached the railroad crossing it was misting or raining; that he stopped his car at the south main line track, got out and wiped the windshield in order to get a better view; that they then proceeded north and ran into a freight train standing upon the crossing; that he did not see any signals or lights and heard no warning signals; that he could have stopped his coupé on a dirt road traveling at a speed of ten or twelve miles an hour, at which rate he was traveling at the time of the collision; and that he was ten or twelve feet from the train when he first saw it. He denied that either he or the deceased had been drinking that evening. He also testified that there was nothing the matter with the deceased as they approached the crossing or at the time of the collision, and that the deceased made no complaint of the manner in which he drove the car, and said nothing as they approached the crossing. There was evidence introduced by the defendant that after the deceased and Bird left the restaurant they approached the crossing at a high rate of speed, estimated at twenty-five to thirty-five miles an hour; that the street lights were burning brightly; that it was not raining at the time; that Bird did not stop his car to wipe the windshield as claimed; that the lights on Bird's car were bright; that the train had backed in on the spur to spot a car at the mill, and at the time of the collision had been occupying the crossing for approximately two minutes; that the defendant's brakeman was in the middle of the street with a lighted lantern in his hand; that he attempted to stop the approaching coupé with his lantern by waving it across the

street; that when the coupé struck the train the deceased fell out and was caught by the brakeman, who smelled alcohol on his breath; that deceased handed another brakeman a quart bottle of intoxicating liquor, which was turned over to the sheriff and produced at the trial; and that the deceased was taken to a hospital, where a physician who dressed his wounds smelled alcohol upon his breath. Evidence that the deceased was "groggy" and seemed to be drunk while at the garage, and that conversation by him at the restaurant showed he was intoxicated, was rejected by the court because defendant's answer contained no specific allegation of the deceased's intoxication.

In *McIntosh v. Oil Co.*, 89 Kan. 289, 131 Pac. 151, it was said:

"Upon the issue whether at a particular time a person was exercising due care for his own safety, evidence that he was intoxicated is ordinarily admissible, not as constituting or conclusively establishing negligence on his part, but as being a circumstance to be considered in determining the matter." (See, also, *Cook v. Railway and Bridge Co.*, 101 Kan. 103, 165 Pac. 803.)

It has been held in an action against one for operating an automobile at a dangerous rate of speed that evidence of intoxication is admissible though not specifically pleaded. (*Milhouse v. Stroud*, 190 N. C. 754.) The defendant's answer in the instant case alleged contributory negligence by the deceased, and that deceased and Bird were engaged in a joint enterprise. Intoxication in any degree is a circumstance to be considered in determining the question of contributory negligence. (*Hughes v. Chicago, R. I. & P. Ry. Co.*, 150 Ia. 232.) Evidence of the intoxication of the deceased at the time of the injury complained of was admissible. (29 Cyc. 534, 620.)

In *Jensen v. Chicago, Milwaukee & St. P. Ry. Co.*, 133 Wash. 208, it was said in the opinion:

"Objection is also made to an instruction upon the matter of Sonnabend's intoxication. This instruction was to the effect that if Sonnabend was at the time of the accident or immediately before under the influence of intoxicating liquor to such an extent as to dull his sense of sight and to prevent, or tend to prevent, him from exercising the care and caution which a sober and prudent man would have exercised under the circumstances, and that Jensen knew or should have known of Sonnabend's condition, and thereafter continued to ride with him, that this would constitute negligence on Jensen's part. The particular objection to the instruction is, not that it does not correctly state the law, but that there is no evidence to justify the giving of an instruction on that subject. Two doctors who appeared at the scene of the accident about twenty minutes after it occurred testified that Sonnabend's breath smelled strongly of intoxicating liquor. The nurse who took care of Jensen after he was taken to the hospital testified that his breath smelled of liquor. Another witness who

was at the scene of the accident soon after it occurred testified that in the wreckage of the car there were found bottles of Canadian beer and broken bottles, and also a whisky bottle that was empty. Broken beer bottles containing the same label as the ones that were found in the car were lying to one side. There was sufficient evidence to justify giving the instruction." (p. 213.)

In *L. & N. R. Co. v. Howser's Administrator*, 201 Ky. 548, it was said:

"It was competent for appellant to prove that deceased was intoxicated, if it could do so, or to introduce evidence from which the jury might reasonably deduce the conclusion that deceased was under the influence of liquor, and therefore not as alert for his own safety as a sober man under like circumstances would have been." (p. 558.)

In *St. Louis, S. F. & T. Ry. Co. v. Morgan*, 220 S. W. 281, 282 (Tex.), it was said in the opinion:

"That he was under the influence of intoxicants would be a fact the jury had a right to take into consideration in determining whether he was guilty of contributory negligence or not, but would not of itself convict deceased of such negligence."

In 22 C. J. 599 the writer says:

"A witness . . . may state whether a person was intoxicated and the extent of his intoxication; and whether he had been drinking or was just recovering from a state of drunkenness." (See, also, *Phillips v. Davis*, 3 F. [2d] 798; *Schwartz v. Johnson*, 280 S. W. 32 [Tenn.]; *Guhl v. Warroad, Stock, G. & P. Co.*, 147 Minn. 44; *Pittsburg &c. R. Co. v. O'Connor*, 171 Ind. 686; *Limbaugh v. Forum Lunch Co.*, 258 S. W. 451 [Mo.]; *American Bauxite Co. v. Dunn*, 120 Ark. 1; *McGowan v. W. & P. Traction Co.*, 5 Boyce, 281 [Del.]; *Wise v. Cleveland C. C. & St. L. Ry. Co.*, 103 N. E. 866 [Ind.]; *Kirby Lumber Co. v. Youngblood*, 192 S. W. 1106 [Tex.]; *Buddenberg v. Chonsteau Trans. Co.*, 108 Mo. 394; *City of Aurora v. Hillman*, 90 Ill. 61; and *Wright v. City of Crawfordsville*, 142 Ind. 636.)

The verdict being for the defendant, the court sustained plaintiff's motion for a new trial on the ground that the verdict was procured by the misconduct of defendant's attorneys. The record shows these proceedings:

"THE COURT: I will hear from the railroad as to why I should not set the verdict aside for misconduct of the attorneys.

"MR. ARMSTRONG: Well, for the reason that there was no misconduct.

"THE COURT: Well, I think there was; and the finding of the court will be to that effect. The motion for a new trial will be allowed. Let the record so show.

"It is therefore by the court considered, adjudged, ordered and directed, that said plaintiff's motion for a new trial be and the same is hereby sustained, for

the reason and upon the ground of misconduct of counsel for defendant during the trial of the case."

While the trial court did not specify of what the misconduct consisted, it is clear that it was the defendant's offers to prove that the deceased was intoxicated at the time of the accident.

"The recital in the record that the plaintiff's motion for a new trial was granted solely upon the ground stated necessarily implies that the trial court was of the opinion that none of the other grounds set out in the motion was well taken. Therefore we can not presume in support of the ruling that the court thought the special findings were contrary to the evidence." (*Sutter v. Harvester Co.*, 81 Kan. 452, 454, 106 Pac. 29.)

While there appears to have been some controversy between the court and attorneys, largely in the absence of the jury, over the offers of evidence of the deceased's intoxication, such offers did not constitute misconduct. The evidence should have been received.

One driving an automobile in the nighttime must so operate the car that he may stop within range of vision of his headlights. (R. S. 8-122; *Giles v. Ternes*, 93 Kan. 140, 153 Pac. 491; *Fisher v. O'Brien*, 99 Kan. 621, 126 Pac. 317.) The general verdict of the jury was equivalent to a finding that Bird was not so operating the coupé and that the deceased made no objection or complaint of the manner in which Bird operated it. (See, also, *Serfas v. Lehigh & New Eng. R. R. Co.*, 270 Pa. St. 306; *Worden v. Chicago & N. W. R. Co.*, 180 Wis. 551; *Yano v. Stott Briquet Co.*, 184 Wis. 492; *Sandoval v. Atchison, T. & S. F. Ry. Co.*, 233 Pac. 840 [N. Mex.].)

The judgment is reversed, and the cause is remanded with directions to set aside the order granting a new trial and enter judgment for the defendant.